**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| ANTHONY BOUYER, | ) | Case No. CV 20-1208 FMO (JEMx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER RE: MOTION FOR DEFAULT JUDGMENT** |
| BRANCH TREE, A CALIFORNIA LIMITED PARTNERSHIP, | ) | |
| Defendant. | ) | |

Having reviewed and considered Anthony Bouyer's ("plaintiff") Motion for Default Judgment, (Dkt. 13, "Motion"), against Branch Tree, a California Limited Partnership, ("defendant" or "Branch Tree"), as well as all accompanying exhibits, the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**

Plaintiff is a paraplegic who requires a wheelchair for mobility. (See Dkt. 1, Complaint at ¶ 1). Branch Tree owns real property located at 19478 Nordhoff Street, Northridge, California 91324 where a LA-Z-BOY retail store is located. (See id. at ¶¶ 2-4). On January 25, 2020, plaintiff went to the subject property "for the dual purpose of shopping for chairs and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning of federal and state law." (Id. at ¶ 8). Plaintiff claims his visit revealed: (1) that "there were no designated parking spaces available for persons with disabilities that compl[y] with the 2010 Americans with Disabilities Act Accessibility Guidelines ('ADAAG')[;]" (2) "a built up curb

ramp that projects from the sidewalk into the access aisle[;]" (3) a curb ramp that is "in excess of the maximum grade allowed by ADAAG specifications[;]" and (4) additional unspecified ADA violations which "affect him personally." (Id. at ¶¶ 11-13). Plaintiff alleges that he "is being deterred from patronizing the Business and its accommodations" because of the architectural barriers. (Id. at ¶19).

On February 6, 2020, plaintiff filed a Complaint against defendant asserting claims for violation of: (1) the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12101, et seq. and (2) the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, et seq. (See Dkt. 1, Complaint at ¶¶ 26-35). On March 6, 2020, plaintiff served the summons and Complaint on defendant. (Dkt. 9, Proof of Service). To date, Branch Tree has not filed a responsive pleading or otherwise appeared in this action. (See, generally, Dkt.). Accordingly, on April 2, 2020, the clerk entered default against Branch Tree. (Dkt. 11, Default by Clerk). Plaintiff then filed the instant Motion, seeking damages, injunctive relief, attorney's fees, and costs. (See Dkt. 13-1, Memorandum of Points and Authorities in Support of Application for Default Judgment ("Memo.") at ECF 37).[1]

**LEGAL STANDARD**

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." After the clerk enters default pursuant to Rule 55(a), the court may enter a default judgment against the party. See Fed. R. Civ. P. 55(b)(2). Upon entry of default, the well-pled factual allegations of the complaint are taken as true, with the exception of allegations concerning the amount of damages. See Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). The scope of relief is limited to the specific demand in the complaint. See Fed. R. Civ. P. 54(c).

Even where well-pled allegations exist, "[t]he district court's decision whether to enter a default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

---

[1] The court uses ECF page numbers to reference pages in plaintiff's Memorandum of Points and Authorities because plaintiff failed to use page numbers in that document. (See, generally, Dkt. 13-1, Memo.).

2

In exercising its discretion as to whether default judgment should be entered, the court considers the following factors: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (the "Eitel factors").

## DISCUSSION

I.  LOCAL RULE 55-1.

Under the Local Rules for the Central District of California, applications for default judgment must include: "(a) [w]hen and against what party the default was entered; (b) [t]he identification of the pleading to which default was entered; (c) [w]hether the defaulting party is an infant or incompetent party[;] (d) [t]hat the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) [t]hat notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2)." Local Rule 55-1.

Here, plaintiff has satisfied the procedural requirements for entry of default judgment. Specifically, plaintiff has established that: (a) the Clerk entered default against defendant on April 2, 2020, (see Dkt. 11, Default by Clerk); (b) the default is based on defendant's failure to respond to the Complaint, (see id.); (c) defendant is neither an infant nor an incompetent person, (see Dkt. 13-1, Memo. at ECF 37); (d) defendant is not in active military service (see Dkt. 13-3, Declaration of Joseph R. Manning, Jr. in Support of Plaintiff's Application for Default Judgment by Court ("Manning Decl.") at ¶ 4); and (e) defendant was properly served with the summons and Complaint, (see Dkt. 9, Proof of Service), as well as the instant Motion. (See Dkt. 13-9, Proof of Service).

II.  THE EITEL FACTORS.

Having concluded that default was properly entered, the court will now determine whether to enter default judgment against defendant.

A. <u>The Possibility of Prejudice to Plaintiff</u>.

The first <u>Eitel</u> factor considers whether plaintiff will suffer prejudice if default judgment is not entered. Here, plaintiff would suffer prejudice if default judgment is not entered because it "would be denied the right to judicial resolution of the claims presented, and would be without other recourse for recovery." <u>Elektra Entm't Grp. Inc. v. Crawford</u>, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Accordingly, this factor weighs in favor of granting default judgment.

B. <u>The Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint</u>.

"Under an [<u>Eitel</u>] analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together." <u>Dr. JKL Ltd. v. HPC IT Educ. Ctr.</u>, 749 F.Supp.2d 1038, 1048 (N.D. Cal. 2010). These two factors require plaintiff to "state a claim on which [it] may recover[.]" <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978).

Plaintiff seeks default under the ADA and Unruh Civil Rights Act. (<u>See</u> Dkt. 13-1, Memo. at ECF 37-41). "A violation of the right of any individual under the [ADA] . . . constitute[s] a violation of [the Unruh Civil Rights Act]." Cal. Civ. Code § 51(f). To prevail on a claim for violation of the ADA, plaintiff must establish that: "(1) [he] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability." <u>Molski v. M.J. Cable, Inc.</u>, 481 F.3d 724, 730 (9th Cir. 2007). The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities[,]" and the statute lists walking as a "major life activity[.]" 42 U.S.C. §§ 12102(1)(A) & 12102(2)(A). Sales establishments are places of public accommodation. <u>See</u> 42 U.S.C. § 12181(7)(E).

Discrimination prohibited by the ADA includes the "failure to remove architectural barriers . . . where such removal is readily achievable[.]" 42 U.S.C. § 12182(b)(2)(A)(iv). Removal of barriers is readily achievable when it is "easily accomplished and able to be carried out without much difficulty or expense[,]" taking into account factors such as:

> (A) the nature and cost of the action needed under this chapter; (B) the
> overall financial resources of the facility or facilities involved in the action; the

4

number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such action upon the operation of the facility; (C) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of employees; the number, type, and location of its facilities; and (D) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

42 U.S.C. § 12181(9).

Here, plaintiff alleges that he is a person with a disability within the meaning of the ADA, (see Dkt. 1, Complaint at ¶ 1); that defendant owns the property and business, (see id. at ¶¶ 2-4 & 8); and the property and business is a place of public accommodation. (Id. at ¶ 9). Plaintiff also alleges that the business is not accessible due to "architectural barriers" including "a built up curb ramp that projects from the sidewalk and into the access aisle" and a "curb ramp [ ] in excess of the maximum grade allowed by ADAAG specifications[.]" (See id. at ¶ 12). Additionally, plaintiff claims that the business lacks "designated parking spaces available for persons with disabilities." (Id. at ¶ 11). According to plaintiff, these barriers have deterred him from patronizing the business and its accommodations. (See id. at ¶ 19). Finally, plaintiff alleges that the violations are "easily removed without much difficulty or expense." (Id. at ¶ 23).

Plaintiff alleges that defendant is required to ensure that the privileges, advantages, accommodations, facilities, goods and services of the property and business are offered to anyone and must "remove architectural barriers where such removal is readily achievable[.]" (See Dkt. 1, Complaint at ¶ 27). However, plaintiff has not demonstrated that the removal of the architectural barriers is "readily achievable" or discussed any of the factors relevant to the inquiry. (See Dkt. 13-1, Memo. at ECF 40). He argues that "[w]hether or not the removal of these barriers is 'readily achievable' is an affirmative defense that is waived unless raised." (Id.).

"[T]he Ninth Circuit has not yet ruled which party has the burden of proof to show that removal of a barrier is readily achievable." Rutherford v. Lucatero, 2020 WL 2132995, *6 (C.D. Cal. 2020) (internal quotation marks omitted). Some district courts impose the initial burden of production on defendants to demonstrate that removal of barriers is not readily achievable, see, e.g., Lemmons v. Ace Hardware Corp., 2014 WL 3107842, *11 (N.D. Cal. 2014); Rodriguez v. Barrita, Inc., 2012 WL 3538014, *11 (N.D. Cal. 2014), while others place the burden on ADA plaintiffs. See, e.g., Rutherford, 2020 WL 2132995, at *6; Lopez v. Lopez, 2019 WL 7905742, *5 (C.D. Cal. 2019); Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1010-11 (C.D. Cal. 2014).

Whether the burden falls on plaintiff or defendant does not affect the outcome here. Plaintiff has alleged that defendant is obligated to remove barriers where removal is readily achievable, (see Dkt. 1, Complaint at ¶¶ 23 & 27), while defendant has not appeared in the action. In light of plaintiff's allegations and in the absence of any evidence that removal of the barriers at the business and property are not readily achievable, the court finds plaintiff has stated a claim under the ADA and the Unruh Civil Rights Act. See, e.g., Vogel, 992 F.Supp.2d at 1011 (finding that plaintiff's "allegation that removal of the barriers was readily achievable is sufficient to satisfy his burden or production" and that the defendant failed to meet his burden because he did not appear to defend the action); Spikes v. Shockley, 2019 WL 5578234, *4 (S.D. Cal. 2019) (finding plaintiff's "allegation that removal of such barriers is readily achievable is sufficient to satisfy the burden of production" for both plaintiff's ADA and Unruh claims).

C. The Amount of Money at Stake.

Under the fourth Eitel factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." Truong Giang Corp. v. Twinstar Tea Corp., 2007 WL 1545173, *12 (N.D. Cal. 2007).

A plaintiff seeking default judgment is "required to prove all damages sought in the complaint." Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003). However, where a plaintiff chooses to recover statutory damages, actual damages need

not be proven. See Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) ("A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits.") (internal quotation marks omitted). "If statutory damages are elected, [t]he court has wide discretion in determining the amount of statutory damages to be awarded[.]" Id. (internal quotation marks omitted).

Here, plaintiff, who visited the business and experienced the alleged barriers on one occasion, (see Dkt. 1, Complaint at ¶¶ 11-13), requests the statutory minimum damages amount of $4,000 pursuant to the Unruh Civil Rights Act, Cal. Civ. Code § 52(a).[2] (See Dkt. 13-1, Memo. at ECF 41); see, e.g., Arroyo v. Svela, 2012 WL 2577495, *2-3 (C.D. Cal. 2012) ("[P]laintiff was denied full and equal access when he encountered barriers to access at [defendant's facility] and subsequently felt deterred from returning to the venue[.] . . . Plaintiff is therefore entitled to a statutory award of $4,000 pursuant to Cal. Civ. Code § 52(a).").

D. The Possibility of a Dispute Concerning Material Facts.

Upon entry of default, all well-pled allegations in the complaint are taken as true except those relating to damages. See TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). In addition, "[t]he district court is not required to make detailed findings of fact." Fair Hous. of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). Since defendant did not answer the Complaint or otherwise appear in this action, (see, generally, Dkt.), it is unclear whether there would be any genuine dispute over material facts.

E. Whether the Default Was Due to Excusable Neglect.

Excusable neglect is an equitable concept that takes account of factors such as "prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether

---

[2] Under the Unruh Civil Rights Act, "[w]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to [Cal. Civ. Code §§] 51, 51.5, or 51.6, is liable for each and every offense for the actual damages[] . . . up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)[.]" Cal. Civ. Code § 52(a).

the movant acted in good faith." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498 (1993). Here, there is no evidence that defendant failed to defend this action due to excusable neglect. Defendant was served with the summons and Complaint, (see Dkt. 9, Proof of Service), and the instant Motion, (see Dkt. 13-9, Proof of Service), and failed to respond or otherwise defend itself in this action. (See, generally, Dkt.). In short, this factor weighs in favor of default judgment.

### F. The Strong Policy Favoring Decisions on the Merits.

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, "this preference, standing alone, is not dispositive." Kloepping v. Fireman's Fund, 1996 WL 75314, *3 (N.D. Cal. 1996). Defendant's failure to answer the Complaint "makes a decision on the merits impractical, if not impossible." PepsiCo, Inc., 238 F.Supp.2d at 1177. Under Fed. R. Civ. P. 55(b), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. The court therefore finds that granting default judgment is appropriate in this action as set forth above.

### G. Summary of the Eitel Factors.

On balance, the Eitel factors weigh in favor of granting default judgment.

## III. REMEDIES.

In addition to the damages set forth above, see supra at § II.C., plaintiff seeks (1) injunctive relief, (Dkt. 1, Complaint at p. 8; Dkt. 13-1, Memo. at ECF 41), (2) $3,731 in attorney's fees, (Dkt. 13-3, Manning Decl. at ¶ 8), and (3) $538 in litigation costs. (Id.).

### A. Injunctive Relief.

In seeking injunctive relief, plaintiff makes no effort to address the factors necessary to obtain permanent injunctive relief. (See, generally, Dkt. 13-1, Memo.); see also Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv., 789 F.3d 1075, 1088 (9th Cir. 2015) ("Under well-established principles of equity, a plaintiff seeking permanent injunctive relief must satisfy a four-factor test by showing: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.") (internal quotation marks omitted). Plaintiff's conclusory request for injunctive relief, (see Dkt. 13-1, Memo. at ECF 41), is plainly insufficient to satisfy the requirements for granting permanent injunctive relief. See, e.g., McClain v. Wells Fargo Bank, N.A., 2012 WL 851402, *3 (N.D. Cal. 2012) (rejecting defendants' "undeveloped argument" because they "neither cited any legal authority nor provided the requisite legal analysis[.]"); Global Horizons, Inc. v. U.S. Dep't of Labor, 510 F.3d 1054, 1058 (9th Cir. 2007) (Because plaintiff "provided only a conclusory one-sentence argument . . . the district court did not abuse its discretion when it did not address them specifically in its order."); see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

      B.     Attorney's Fees and Costs.

Plaintiff argues that the court should not use the schedule in Local Rule 55 to calculate attorney's fees in this case, (see Dkt. 13-1, Memo. at ECF 43-44), and seeks $3,731, which plaintiff claims is a "reasonable" fee. (See id.; Dkt. 13-3, Manning Decl. at ¶ 8).

"[T]he ADA gives courts the discretion to award attorney's fees to prevailing parties[,]" and "[t]he Unruh Act also allows for attorney's fees." Molski, 481 F.3d at 730-31. State law applies to the right to recover attorney's fees for state law claims in a federal court action, even when there is a federal corollary. See Bass v. First Pac. Networks, Inc., 219 F.3d 1052, 1055 n. 2 (9th Cir. 2000) ("[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction."); Egelhoff v. Pac. Lightwave, 2013 WL 12125913, *1 (C.D. Cal. 2013) ("When exercising supplemental jurisdiction over state law claims, federal courts must determine attorney's fees by applying state law.") (footnote omitted). Under the circumstances here, the court will apply state and federal law in evaluating plaintiff's attorney's fees request. See Hoffman v. Constr. Protective Servs., Inc., 2006 WL 6105638, *3 (C.D. Cal. 2006) ("Where the Complaint invokes both state and federal law, the method of calculating attorney's fees rests in the Court's discretion."); see, e.g., Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1479 (9th Cir. 1995)

(noting that in case involving state and federal statutes, "[t]he trial court did not err in applying state law to calculate the fees").

The court will calculate plaintiff's request for attorney's fees using the lodestar method, which "is generally the same under California law and Federal law." Rodriguez v. Cty. of Los Angeles, 96 F.Supp.3d 1012, 1017 (C.D. Cal. 2014). Under the lodestar method, "the trial court first determines a touchstone or lodestar figure based on a careful compilation of the time spent by, and the reasonable hourly compensation for, each attorney, and the resulting dollar amount is then adjusted upward or downward by taking various factors into account." Chavez v. City of Los Angeles, 47 Cal.4th 970, 985 (2010); see Camacho, 523 F.3d at 978 (an award of attorney's fees using the lodestar method is "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.") (internal quotation marks omitted).

A party seeking attorney's fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the relevant community." Carson v. Billings Police Dep't, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks omitted); Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."). Here, plaintiff's counsel seeks hourly rates of $450 for attorney Joseph Manning and $375 for his unnamed associate attorney. (Dkt. 13-3, Manning Decl. at ¶ 7). "In making its calculation [of a reasonable hourly rate], the court may rely on its own knowledge and familiarity with the legal market, as well as the experience, skill, and reputation of the attorney requesting fees, the difficulty or complexity of the litigation to which that skill was applied, and affidavits from other attorneys regarding prevailing fees in the community and rate determinations in other cases." 569 East Cty. Boulevard LLC v. Backcountry Against the Dump, Inc., 6 Cal.App.5th 426, 437 (2016) (citations omitted).

With respect to Mr. Manning, the court is satisfied that his hourly rate is in line with the prevailing market rate in this District. (See Dkt. 13-3, Manning Decl. at ¶ 7); Camacho, 523 F.3d at 979. However, the court is unable to determine whether the requested hourly rate for the

unnamed associate is reasonable because plaintiff failed to provide the court with any information about this attorney. (See, generally, id.). There is no information as to the unnamed attorney's legal education, years in practice or experience litigating ADA cases. (See, generally, id.). Therefore, the court will award fees only for the work performed by Mr. Manning. Mr. Manning seeks fees in the amount of $1,462.50 for 3.25 hours for work, (see id. at ¶ 8), which the court finds is reasonable.

Finally, plaintiff has adequately documented the $538 of costs he incurred during this lawsuit, which consist of the $400 filing fee and $138 for service costs. (See Dkt. 13-3, Manning Decl. at ¶ 8; Dkt. 13-7, Billing Statement).

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Default Judgment **(Document No. 13)** is **granted** as set forth in this Order.

2. Default judgment shall be entered in favor of plaintiff Anthony Bouyer and against defendant Branch Tree.

3. Defendant Branch Tree shall pay plaintiff statutory damages in the amount of $4,000.00.

4. Defendant Branch Tree shall pay plaintiff attorney's fees and costs in the amount of $2,000.50.

5. Plaintiff shall serve defendant with a copy of this Order and the contemporaneously-filed Judgment in such a manner as to make them operative in any further proceedings.

6. Judgment shall be entered accordingly.

Dated this 13th day of May, 2020.

/s/
Fernando M. Olguin
United States District Judge